**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DERRICK RODNEY, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:    19-11890** |
| **ELLIOTT SECURITY SOLUTIONS,<br>LLC, ET AL.** | **SECTION: "T" (4)** |

## REPORT AND RECOMMENDATION

On May 21, 2020 the presiding U.S. District Judge referred the **Plaintiffs' Motion for Attorney's Fees and Costs (R. Doc. 73)** seeking attorney's fees Plaintiffs incurred in prosecuting their Fair Labor Standards Act ("FLSA") claims in this litigation in the amount of $41,335.00. The motion is opposed. R. Doc. 81. Plaintiffs replied to the opposition.  R Doc. 84. The matter was considered on the briefs.

## I.    Factual Summary

Plaintiffs Derrick Rodney, Jerome Batiste, and Courtney Watson (sometimes collectively referred to as "Plaintiffs") filed this lawsuit under the FLSA and Louisiana Wage Payment Act ("Wage Payment Act") against the Defendants Elliott Security Solutions, LLC, Ian Kennard, Darrin Elliott, Sr., and Dayone Elliott (sometimes collectively referred to as "Defendants").  With respect to the FLSA claims, the Amended Complaint alleged that Defendants made deductions to Plaintiffs' wages in violation of the FLSA for, among other things, (a) application and training fees, (b) uniforms, (c) "rental" of items integral to Plaintiffs' work, including the "rental" of firearms, and (d) items that Defendants incorrectly claim that Plaintiffs lost, including firearms. R. Doc. 17, ¶ 14. Plaintiffs further alleged that "[t]he deductions that Defendants have made to Plaintiffs' wages violate the FLSA because they had the effect of "(a) reducing Plaintiffs' wages

below the minimum wage of $7.25 for hours worked in a workweek; and/or (b) reducing Plaintiffs' overtime hourly rate such that they did not receive 1 ½ times their regular rate of pay for all hours worked over forty in a workweek." *Id.* at ¶ 15.

Plaintiffs' FLSA claims also alleged that they regularly worked more than forty (40) hours in a workweek for Defendants, but often were not paid all overtime wages for the time worked. R. Doc. 17, ¶ 16. As to the Wage Payment Claims, Plaintiffs alleged that Defendants did not pay them for all hours they worked for Defendants, including "their straight-time rate of pay for hours that Plaintiffs were required to work." R. Doc. 17, ¶¶ 19-21.The Plaintiffs sought unpaid overtime compensation, past and future wages, liquidated damages, costs and attorney's fees. R. Doc. 17, p. 8.

After nearly months of investigation, discovery, and motion practice the Defendants' ultimately served an Offer of Judgment on May 4, 2020  in the amount of $17,750.00, exclusive of attorney's fees which was accepted by the three plaintiffs. (Doc. # 67-1). Defendants' Notice of Acceptance of Offer of Judgment explicitly states that they "will pay the reasonable attorneys' fees that are recoverable under the FLSA [Fair Labor Standards Act] and LWPA [Louisiana Wage Payment Act], with respect to such fees incurred through the date of the offer of judgment and in an amount to be determined by the Court after contradictory motion seeking such amounts has been filed, briefed, and argued by the parties." R. Doc. 67-1, at ¶ 2. Plaintiffs now seek the sum of $41,335.00 in attorney's fees for 118.1 hours of work charged at a rate of $350.00 per hour for every task completed.

The Defendants oppose the motion. R. Doc. 81.  The Defendants contend that the fee sought by the Plaintiffs is outrageous.  The Defendants contend that the approached utilized by Plaintiffs' counsel was unnecessary and overly aggressive, which was entirely unreasonable and

disproportionate to the needs of the case. R. Doc. 81, p. 1-2. They further contend the outrageous nature of Plaintiffs' counsel's approach to the case is reflected in Plaintiffs' counsel's inflated billing records that evidence a lack of billing judgment, including duplicative and unnecessary work, block billing, vague entries, charges for administrative tasks, charges for unsuccessful matters, and charges at a premium rate of $350.00 per hour for simple, entry-level attorney tasks, such as document review and basic drafting and legal research. *Id.* The Defendants, therefore, contend that Plaintiffs 'request for attorney's fees should be significantly reduced. R. Doc. 81, p. 3.

## II.    <u>Standard of Review</u>

Under the Fair Labor Standards Act, the District Court may award reasonable attorney's fees to the prevailing party. *Tyler v. Union Oil Co. of Calif.* 304 F.3rd 379, 404 (5th Cir. 2002). The lodestar method is used to calculate an appropriate attorney's fees award under the FLSA. *Heidtman v. County of El Paso*, 171 F.3rd 1038, 1043 (5th Cir. 1999). The lodestar is calculated by "multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work." *Id.* "The most critical factor in determining an attorney's fees award is the 'degree of success obtained.'" *Hensley v. Eckerhart*, 461 U.S. 424, 436, (1983). Prevailing party status "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.*

" While a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award." *Singer v. City of Waco, Tex.,* 324 F.3d 813, 830 (5th Cir. 2003) (citations omitted). In a lawsuit initiated under the FLSA, "an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced." *Id.* (quoting *Spegon v.*

*Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999)).

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. *Hensley*, 461 U.S. at 433. The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. The lodestar is presumed to yield a reasonable fee. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole time a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. Additionally, in the case where the matter has settled and the settlement agreement does not contain an admission of liability, the court may take into consideration the proportionality of the award (difference between the initial prayer and the ultimate settlement amount) with the ultimate attorney's fees sought. *See Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 801 (5th Cir. 2006).

After determining the lodestar, the Court must then consider the applicability and weight of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1] The Court can make upward or downward adjustments to the lodestar figure if the *Johnson* factors warrant such modifications. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). However, the lodestar should be modified only in exceptional cases. *Id.*

"To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked

---

[1] The twelve *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

and rates claimed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley*, 461 U.S. at 433). After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended "by affidavit or brief with sufficient specificity to give fee applicants notice" of the objections. *Id.*

## III.    Analysis

### A.    Reasonableness of the Hourly Rate

Plaintiffs contend that their attorney Christopher L. Williams has approximately seventeen (17) years of experience in labor-and-employment law and, in particular, FLSA claims like those asserted here. R. Doc. 73-5. Mr. Williams is 2003 *magna cum laude* graduate of Tulane University and was inducted into the Order of the Coif. *Id.* Mr. Williams's declaration states that he has authored numerous articles on litigation employment law issues, litigated dozens of FLSA cases and has previously served as a panelist for Louisiana State Bar Association Section on Labor and Employment Law section. *Id.* Based on his qualifications and experience, Plaintiffs seek an hourly rate of $350/hour for Mr. Williams. R. Doc.73-1, p. 8.  Plaintiffs cite to several cases and affidavits from local labor and employment law practitioners, which he contends supports his billing rate. *Id.*

The Defendants contend that Plaintiffs' counsel has failed to prove the reasonableness of his hourly rate. R. Doc. 81, p. 27.  Defendants contend that this rate is unreasonable where the case was (1) simple (2) consisted only of three plaintiffs and wage hour disputes with no certification, (3) no depositions where taken, and (4) no dispositive motions were filed. *Id.* The Defendants contend further that the supporting declarations for the hourly rate were general in nature and do not contain any information, specific to this case, supportive of Williams's hourly rate of $350.00

being reasonable. R. Doc. 81, p. 28.  Additionally, the Defendants contend that Williams billed at partner level rates for associate level work, which warrants a reduction in the hourly rate, from $350.00 to $250.00, for the work William's performed as a solo practitioner that would routinely be done by an associate. R. Doc. 81, p. 29.

In determining the reasonable hourly rate, courts look to the reasonable hourly rate for attorneys of a "similar caliber practicing in the community." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 756 (S.D.Tex. 2008); *see also Watkins,* 7 F.3d at 458; *Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir. 2002). "When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed." *Louisiana Power & Light*, 50 F.3d at 328. "When that rate is not contested, it is *prima facie* reasonable." *Id.*

District Judge Vance, in an FLSA case, found that $300.00 hourly rate is reasonable for partner level work. Reasonable. *See, e.g., Johnson v. Big Lots Stores, Inc*., 639 F. Supp. 2d 696, 701 (E.D. La. 2009). Two years ago, with fifteen years of experience, Williams was awarded an <u>uncontested</u> hourly rate of $325.00.  *Sanchez v. Pizzati Enterprises, Inc.*, No. CV 17-9116, 2018 WL 3954866, at *4 (E.D. La. Aug. 16, 2018)

In *Funez v. E.M.S.P.* 2019 WL 630295 ( E.D. La. 2019), the undersigned awarded Williams a $300.00 hourly rate, relying on the *Johnson v. Big Lots* case and, on appeal, in February 2019, District Judge Milazzo, on appeal, increased Williams's hourly rate to $320.00. *Id.* At the rendering of the *Funez* decision, Williams had sixteen years of experience. *Id.* Now, only one later, Williams seeks an hourly rate of $350.00.  There is no explanation for the proposed increase in rate other than, presumably, the passage of a year.

6

Additionally, Williams submitted the declaration of Kerry A. Murphy, a principle managing partner at Lasky Murphy LLC, a law firm that handles employment litigation as well as business and commercial litigation, in New Orleans, Louisiana. R. Doc. 73-6. Ms. Murphy declares that her rates are between $300.00 to $400.00 per hour, despite not distinguishing between the types of litigation matters; that she sets billing rates for her firm; and, in her opinion, Williams's rate of $350.00 is reasonable. *Id.* Murphy's declaration does not state whether her rates differ depending on the classification of the matter. *Id.* Giving Murphy's declaration as much weigh as reasonable in light of these lapses, her range of rate between $300.00 and $400.00 is still consistent with the $320.00 hourly rate previously awarded to Williams just last year.

Williams also submits the declaration of Charles Stiegler, a former coworker from Proskauer Rose LLP whom now owns his own law firm and periodically works as co-counsel with Williams on FLSA cases. R. Doc. 73-7. Stiegler declares that he is familiar Williams' qualifications and skill and rates charged in this market. *Id.* Consequently, Stiegler declares that Williams's rate of $350.00 is reasonable. *Id.* Notably, however, Stiegler does not provide any detail as to the rates charged in similar cases or whether he has been awarded a rate of $350.00 in a FLSA case, regardless of whether one Stiegler served as co-counsel or one he litigated on his own.

Finally, Williams submitted the declaration of Robert Landry III an attorney who previously worked at Chaffe McCall but now owns his own law firm, Robert P. Landry III, PLC. R. Doc. 73-8. Landry declares that he sets his own rates, specializes in employment matters and is familiar with the rates in the New Orleans market. *Id.* Consequently, he opines that Williams's rate of $350.00 is reasonable. *Id.* Like Stiegler, Landry declared that he has handled FLSA cases but fails provide any information as to what he charges in those types of cases, whether he has been awarded an hourly rate of $350.00, or whether he distinguishes his rates depending on the type of

7

case based on complexity or the routine nature of the matter. Stiegler also does not provide any detail as to the rates of other firms in the New Orleans market.

In the reply, Williams contends that his rate of $350.00 is reasonable because the recovery he secured for his clients was between two to four times the Defendants' previous settlement offers that were inclusive of attorneys' fees. R. Doc. 84, p. 5. Williams also points out that the offer of judgment was made days before the seven scheduled depositions. R. Doc. 84, p. 6. Williams also argues that Defendants' opposition to his proposed rate is "that working-class folks" like Plaintiffs are not deserving of "high-quality legal representation" to prosecute their claims unless they file a class or collective action. R. Doc. 84, p. 13.

While the Plaintiffs and/or their counsel seem to exhibit a flair for the dramatic, in the contention that a challenge to the reasonableness of Williams's rate is reflective of a desire to deny "working-class folks" "high-quality legal representation," there is no request by the Defendants that the entire fee award be denied. The only request is that the Court award a reasonable billable rate and fee.

Before determining the reasonable rate, the Court must address the Defendants' contention that Williams' work should be reduced to a $250.00 where he performed work traditionally by less experienced attorneys such as an associate. In *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612 (E.D. La. 2006), in setting the reasonable rate, District Judge Vance used a blended rate. In so doing, she noted that the blended rate reflected "that not all of the work involved should have been performed by the highest- level attorneys." *Id.* at 633. She further observed that "given the stage of the proceeding, most of the legal work before settlement involved tasks such as research, drafting, and document review, which reasonably should have been performed by associate-level attorneys." *Id.*

8

The Defendants also cite *White v. Imperial adjustment* Corp, for the proposition that attorneys customarily charge their highest rates only for trial work and lower rates should be charged for routine work requiring less extraordinary skill and experience. *White v. Imperial Adjustment Corp.*, No. CIV.A. 99-3804, 2005 WL 1578810, at *8 (E.D. La. June 28, 2005) (citing *Leroy v. City of Houston*, 906 F.2d 1068, 1079, 1086 (5th Cir. 1990)). Judge Engelhardt, now serving on the United States Court of Appeals for the Fifth Circuit and formerly a District Judge on this Court, held that "lower rates may, and indeed should, be charged for routine work requiring less extraordinary skill and experience." *Id.*

In  *White,* Judge Engelhardt noted that the case did not proceed to trial and awarded a lower rate after considering the market rate based upon the skill of the attorneys and reduced the rate from $500.00 per hour to $225.00 per hour. *Id.* (noting counsel could reasonably expect to be compensated at incrementally, but not exponentially for passage of time and experience). To note, both cases were resolved by settlement, which is not uncommon in this district, and, as consequence, the rates approved by Judgebilling Vance and Judge Engelhardt were $250 and $225 respectively.

While the first case, *In re Educ. Testing Serv.*, is distinguishable because it involved a large firm, and, in this case, Williams is a solo practitioner, the *White* case considered a fee request from a solo practitioner and the same principle was applied.  So, it is clear to this Court then that it is the classification of the work that is most relevant. *See Leroy*, 906 F.2d at 1079 ("Of course, as to some tasks, generally more routine ones, it often may not be reasonable to expect any significant reduction in the hours required by virtue of a particular attorney's greater than normal experience and skill. But as to such tasks, hourly rates near the top of the scale will nevertheless generally be inappropriate if in the particular context the task could have been properly accomplished with

greater overall cost efficiency by competent personnel whose lesser experience and skill would not justify such high rates.").

Williams did not address the appropriateness of the blended rate in any pleading and instead cited expenses *Hernandez v. U.S. Customs & Border Prot. Agency*, No. CIV.A. 10-4602, 2012 WL 398328 (E.D. La. Feb. 7, 2012) for the proposition that a rate of $300.00 was approved for any attorney with eight years of experience. In *Hernandez*, a FOIA attorneys fee award, Plaintiff's counsel actually sought a fee of $350.00, which was reduced to $300.00 where the Defendants did not submit any contradictory affidavit evidence but rather challenged the excessiveness of the billable rate. *See id.* After an exhaustive analysis of the rates award in cases decided in the last two years, the Court awarded counsel a rate of $300.00 per hour. *Id.* at *15-16. Notably, the lead counsel in Hernandez was a Harvard law graduate, director of a nonprofit, who also previously served as a judicial law clerk in federal court. *Id.* at *14.

While this case cited by Williams was clearly used to suggest a lawyer with less experience was at least awarded a rate of $300.00 per hour, this case seemingly misses the fine distinction at issue here—whether a blended rate should be used for the more routine lawyering skills, such as reviewing documents, research and document review.  The Court will not impose an hourly rate of $350.00 for noncomplex work that requires "less extraordinary skill and experience." *Health Net, Inc. v. Wooley*, No. CV 06-845-A-M2, 2007 WL 9758443, at *7 (M.D. La. Aug. 23, 2007) (finding blended rate more acceptable for highest level attorneys that performed work which involved tasks such as research, drafting, and document review); *see also Cerdes v. Cummins Diesel Sales Corp.*, No. CIV.A. 06-922, 2010 WL 2835755, at *3 (Lemelle, J.) (E.D. La. July 15, 2010) (finding blended rate of $300 per hour acceptable to account for the reality that not all of this work will be performed by partners); *In re OCA, Inc. Sec. & Derivative Litig.*, No. CIV.A.05-

10

2165, 2009 WL 512081, at *25 (Vance, J.) (E.D. La. Mar. 2, 2009) (noting blended rate is used to reflect that not all of the work was or should be performed by the highest level attorneys); *Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-CV-02885, 2015 WL 1198604, at *4 (W.D. La. Mar. 16, 2015) (reducing hourly rate from $450.00 to $275.00 for "extremely qualified and seasoned litigators" for fairly routine work performed in fairly uncomplicated lawsuit); *Pickney v. Strategic Restaurants Acquisition Co. LLC*, No. CV 16-0211, 2017 WL 1821125, at *2 (W.D. La. May 4, 2017) (reducing requested billing rate from $335.00 to $275.00 for routine work requiring less extraordinary skill and experience where highest rate should be reserved only for trial work). Consequently, this Court will apply a rate of $275.00 for routine work that did not require the highest level of skill, *i.e.*, research, drafting and reviewing documents. After considering all of the evidence submitted by the Plaintiffs' and Williams, for all other more complex work, the Court finds that a reasonable rate is $325.00.

### B. <u>Determining the Reasonable Hours Expended</u>

 Plaintiffs' counsel contends that he was required to spend 118.1 hours litigating this matter. R. Doc. 73-5, p. 7-21. Plaintiffs' counsel contends that he was required to spend substantial time obtaining the relief awarded in this case, $17,750.00 exclusive of attorney's fees, and the hours spent were reasonably expended in the pursuit of obtaining a favorable resolution for Plaintiffs. R. Doc. 73-1, p. 4. Plaintiffs contend that because their counsel has provided an evidentiary showing in the form of counsel's declarations and detailed billing records, it is now Defendants' burden to identify the specific time entries to which they object. R. Doc. 73-1, p. 9.

Defendants do not dispute that Plaintiffs are entitled to recover reasonable attorneys' fees pursuant to the terms of the Rule 68 Offer of Judgment. R. Doc. 81, p. 2. However, Defendants contend fee request of $41,335.00 is unreasonable in light of the total recovery here—$17,750.00.

*Id.* Defendants also contends that Plaintiffs' counsel's failed to exercise billing judgment, included duplicative, unnecessary, repetitive, block billed and vague entries. *Id.* Defendants further contend that Plaintiffs' counsel improperly charged for administrative tasks, unsuccessful matters, and entry level clerical work all at a premium rate of $350.00 per hour.

1. **Billing Judgment**

Before proceeding with the analysis, the Court will consider the issue of whether plaintiffs' counsel has exercised billing judgment. It is axiomatic that a fee applicant "[is] charged with the burden of showing the reasonableness of the hours [it] bill[s] and, accordingly, [is] charged with proving that [it] exercised billing judgment" *Walker v. U.S. Dep't of Hous. & Urban Dev.,* 99 F.3d 761, 769 (5th Cir. 1996). Billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours[, and fee applicants] submitting fee requests are *required* to exercise. billing judgment." *Id.* (emphasis added). "The proper remedy for omitting evidence of. billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Saizan*, 448 F.3d at 799.

Defendants contend that Plaintiffs' counsel has failed to exercise billing judgment by seeking full recovery for unsuccessful or partially successful work, i.e., drafting the original Complaint, the Motion to Amend, the Appeal of this Court's April 29, 2020 Order (R. Doc. 61), and Plaintiffs' Motion to Compel (R. Doc. 37). R. Doc. 81, p. 14. The Defendants contend that Plaintiffs' counsel's submission of vague, block-billed, by charging for physically inspecting documents that were unnecessary and duplicative. *Id.* The Defendants contend that Plaintiffs' counsel bills included time for administrative tasks and associate level work, including basic legal research, document review, and drafting, and seeks full recovery for such tasks at his premium

rate. R. Doc. 81, p. 15. Consequently, the Defendants contend that these entries constitute a failure to exercise billing judgment and, as such, a significant reduction in the fees requested is proper. *Id.*

The Plaintiffs contend that their claims, and the discovery there following, related to the recovery of unpaid wages, whether under the FLSA or the Wage Payment Act, was carried out simultaneously. R. Doc. 73-1, p. 18. Plaintiffs further contend any argument that the time spent on discovery and litigation for each type of claim should be segregated would necessarily fail. *Id.* Plaintiffs contend that all of the claims in the litigation arise from the common nexus of Defendants' failure to pay all compensation owed to them, and, therefore, no reduction is appropriate as the two claims are intertwined and overlapping. *Id.* Plaintiffs further contend that all of their motion practice was necessary and fruitful, resulting in the production of information and documents incredibly helpful to Plaintiffs' case (such as the time/pay records that had not been produced and the previously-undisclosed Department of Labor investigation concluding that Defendants had violated the FLSA).R. Doc. 73-1, p. 18-19.

Plaintiffs finally contend the time spent on litigation is reasonable where Plaintiffs' counsel exhibited billing judgment. R. Doc. 73-1, p. 19. For example, Plaintiffs contend that all entries for administrative tasks, such as e-filing, have been written off. There also are no entries for "local travel" or other unnecessary charges. *Id.* Accordingly, Plaintiffs' contend that where their counsel has properly exercised billing judgment , the Court should award the full amount of attorney's fees sought in this motion. *Id.*

"Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799. "The proper remedy for

13

omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment ." *Id.*

According to the billing entries, Williams highlighted the billing entries related administrative tasks, such as e-filing, and has indicated for these entries there would be "no charge". R. Doc. 73-1, p. 19. The highlighted items are listed below.  He also points out that he did not include entries for "local travel" or "other unnecessary charges". *Id.*  In addition, plaintiff also indicated "no charge" on items dated May 5, 2020 – May 11, 2020 in connection with the motion for attorney fees, which totaled (18.4).

| Date | Work performed | Time. | Fee |
|------|----------------|-------|-----|
| 7/26/2019 | Finalize Complaint and related docs for filing | .2 | 70.00 |
| 8/10/2019 | Meet with process server and receive executed. summons for two defendants; | .2 | 70.00 |
| 8/13/2019 | Meet with process server and receive executed summons for two defendants; File executed summons for Kennard and Dayone Elliott. | .2 | 70.00 |
| 9/3/2019 | Finalize motion for leave and related documents for filing; file same via ECF | .3. | 105.00 |
| 9/25/2019 | Finalize Amended Complaint and exhibits for filing; file same via ECF | .4 | 140.00 |
| 4/6/2020 | Finalize Motion to Compel and Supporting documents for filing: file same via ECF | .3 | 105.00 |
| 4/7/2020 | Draft Motion for Expedited Consideration re: Motion to Compel and proposed order | .2 | 70.00 |
| 4/8/2020 | Review order denying motion to expedite ruling on Motion to Compel | .1 | 35.00 |
| 4/24/2020 | Review order granting motion to enroll Poucher | .1 | 35.00 |
| | Motion for Attorney Fees | 18.4 | |

---

**Total Calculated Billing Judgment**          **20.4 hrs.**

14

**2. <u>Blocked Billing</u>**

The Defendants contend the attorney billing statements also had several block billed entries. R. Doc. 81, p. 21. According to the Defendants, these block billed and vague entries are evidence of a lack of billing judgment. *Id.*

Plaintiffs contend that Williams' time was reasonable. R. Doc. 84, p. 9. Having set forth the position of the parties, the Court will proceed with considering whether Plaintiffs' counsel, Christopher Williams, block billed.

The fee application submitted by the Williams show some entries were "block billed." This term can be defined as the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 n. 9 (10th Cir. 1998). "This practice can make it impossible for the court to determine the reasonableness of the hours spent on each task." *Canon U.S.A., Inc. v. S.A.M., Inc.*, No. 07-1201, 2009 WL 35334, at *4 (E.D. La. Jan. 6, 2009); *see also Gulf Coast Facilities Management, LLC v. BG LNG Services, LLC*, No. 09-3822, 2010 WL 2773208, at *8-9 (E.D. La. July 13, 2010). While block billing creates impediments to the analysis of the attorney's fee bill, the Supreme Court has indicated that it is not a basis for refusing to award attorney's fees. *See Hensley*, 461 U.S. at 437, n. 12. "[T]he method most often used to compensate for block billing is a flat reduction of a specific percentage from the award." *Canon*, 2009 WL 35334, at *5 (citing cases).

Williams invoices indicate that he seeks compensation for 17.9 hours which are properly considered block billed. The entries which are block bill are dated July 18, 2019 (2.8 hrs.); January 15, 2020 (0.4 hrs.); February 14, 2020 (1.4 hrs.); March 17, 2020 (1.6 hr.); April 12, 2020 (0.5 hrs.); April 13, 2020 (2.8 hrs.); April 17, 2020 (0.8 hrs.); April 19, 2020 (1.6 hrs.); April 20, 2020

(1.3 hrs.); April 21, 2020 (3.6 hrs.); and April 28, 2020 (1.1 hrs.). These entries cannot be segregated; however, the Court finds that the appropriate resolution is to decrease the total entries which block billing occurred by a percentage. In this case, the Court finds that a reduction of those "block billed" entries by 35% is appropriate. *See, e.g.*, *Verizon Business Global LLC v. Hagan*, No. 07-0415, 2010 WL 5056021, at *5 (E.D. La. Oct. 22, 2010) (citing cases showing that reductions for block billing between 15% and 35% have been found reasonable), *vacated on other grounds*, 467 F. App'x 312, 2012 WL 1414448 (5th Cir. Apr. 24, 2012). The reasonable hours for the entries by Williams equal 11.635 hrs.

### 3. **Vague Entries**

Next, the Defendants contends that Plaintiffs billing statements contain several entries are vague. R. Doc. 81, p. 19. The Defendants suggest that twenty-four entries by Plaintiffs' counsel ranging from August 9, 2019 through May 4, 2020 noting email correspondence with opposing counsel lack sufficient detail. R. Doc. 81, p. 19-20. They contend that these communications lack sufficient detail as a matter of law because he fails to identify the sender/recipient of the communication or vague descriptions of the subject matter. *Id.* Defendant also contend that another twelve entries from October 17, 2019 to May 4, 2020 are vague because it forces the reader to ascertain what work was performed and whether the work was productive or duplicative. *Id.*

Plaintiffs' counsel does not directly address the issue of the clarity of the billing entries. *See* R. Doc. 84, p. 10. He does contend, however, that his entries were reasonable.

Vague entries are those that are "not illuminating as to the subject matter" or " vague as to precisely what was done." *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *11 (N.D. Tex. Dec. 20, 2005), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). Examples such as: "revise memorandum," "review pleadings," "review documents,"

and "correspondence" are sufficiently vague that the court could accept or reject them in a fee application. *Id.* (citation omitted). In *Barrow,* the court found entries, such as "review file," "preparation of correspondence," "review correspondence," "phone conference with co-counsel," "legal research," and "review email" were all vague and did not award attorney fees for these entries. *Id.* (citation omitted); *see also Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *5 n. 6 (N.D. Tex. July 1, 2015) ("Litigants take their chances when submitting such fee applications, as they provide little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision." (citation omitted)).

Concerning Williams' email correspondence, and in contrast to counsel in the *Barrow* case, Williams' notates he is the sender, the recipient is opposing counsel, and provides brief description what the emails are regarding. The Court finds these contain sufficient detail.

Concerning the other twelve entries to which Defendants complain, the Court finds two entries vague. The entry of March 10, 2020: "Prepare for and participate in meet and confer with opposing counsel." It is unclear what was done in preparation for the meet and confer. Therefore, this entry of 0.7 hours should be disallowed. Likewise, the entry dated April 13, 2019, "prepare for and participate in call with opposing counsel re: Plaintiffs settlement offer". It is unclear what was done in preparation of responding to the settlement offer. Therefore, this entry of 0.4 hours should be disallowed.

Regarding the other entries which the Defendants contend is vague, the Court disagrees. The entries dated October 17, 2019, October 18, 2019, October 20, 2019 and October 22, 2019 concern the drafting of a response to the Defendant's motion to dismiss. Williams worked on the opposition for five days and it was filed on October 22, 2019. *See* R. Doc. 24. The entries

associated with responding to the Motion to Dismiss total 9.9 hours.

The final grouping of entries the defendants contend are vague are regarding the preparation for Elliott Security Solutions corporate deposition. The date range of these entries are April 30, 2020 through May 4, 2020 and total 9 hours. These entries are sufficiently clear to know the purpose of the work. However, the depositions never occurred. First counsel drafted a deposition outline for Defendant Dayone Elliott's deposition (1.7 hrs.) and the 30(b)(6) corporate deposition (2.1 hrs.) on April 30, 2020. On May 2, 2020. Williams continued drafting Elliot's individual outline (0.9 hrs.) and identified exhibits for use in the depositions (1.8 hrs.). On May 4, 2020 he continued drafting an outline for the 30(b)(6) deposition of the corporate entity (1.7 hrs.). The issue regarding deposition preparation time will be addressed later in the opinion. As to vagueness of the entries, however, the Court finds they are not vague.

The only entry in this category that seems unclear is the one dated May 2, 2020 regarding using Dayone Elliot's outline for other two individual defendants (0.8 hrs.). This entry is suggestive of duplicative work. The Court, therefore, will disallow this entry.

Finally, because the individual and corporate depositions never took place in this case, the Court does not find that they added any value to this case. As such, the 8.2 hours Plaintiffs' counsel took preparing for those deposition will be disallowed.

4. **Administrative Work**

Defendants contend that several entries of Plaintiffs' counsel were for administrative tasks. R. Doc. 81, p. 22. Defendants contend that while Plaintiffs' counsel suggests that he wrote off charges for administrative tasks that the billing entries show otherwise. *Id.*

Plaintiffs' counsel suggest that he exercised billing judgment by removing entries for "so-called administrative tasks" such as the time it took him to eFile. R. Doc. 73-1, p. 19. Plaintiffs'

counsel also states that he did not include time for local travel. *Id.*

"Normally, clerical or secretarial costs are part of an attorney's office overhead and are reflected in the billing rate." *Hagan v. MRS Assocs., Inc.*, 2001 WL 531119, at *9 (E.D. La. May 15, 2001) (Africk, M.J.) (reducing hours billed for time attorney sent faxing documents) (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995)); *In re North*, 59 F.3d 184, 195 (D.C. Cir. 1995); and *Gough v. Apfel*, 133 F.Supp.2d 878 (W.D.Va. 2001)). "It is well established that "when an attorney performs a task that could be handled by clerical staff, the opponent should not be charged the attorney's hourly rate.'" *Kuperman v. ICF Int'l*, No. CV 08-565, 2009 WL 10737138, at *9 (E.D. La. Oct. 13, 2009) (citation omitted) (reducing hours billed for time attorney spent copying and Bates-numbering documents). "Clerical work includes copying, typing, labeling, faxing, mailing, filing and/or delivering pleadings/documents." *Id.*

In reviewing the alleged administrative tasks, the Court agrees that the following entries could have been done by clerical staff. The first entry is July 26, 2019: " Prepare summons for four defendants and civil cover sheet for Complaint" (0.3 hrs.). This task does not require any specific legal skill and instead is more administrative. As a result, this entry will be disallowed.

Next, the August 1, 2019 entry: "Correspondence and meeting with process server re-service of complaints and related documents on four defendants" (0.2 hrs.). The task of serving a complaint is clearly more administrative and handing the service documents to the process server tends to be more administrative than legal. As a result, this entry will be disallowed.

Additionally, on August 13, 2019, " Correspondence with process server re: serving opposing counsel with complaints for Kennard and D. Elliott ." (0.1 hrs.). Again, drafting an instruction letter to a process service requesting service on opposing counsel is more administrative and does not require any particular legal skill. This entry will be disallowed.

19

Similarly, on April 9, 2020 "Correspondence to opposing counsel serving 30(b)(6) notice" (0.1 hrs.) shall be disallowed for the mailing and serving of documents is considered clerical.

On September 3, 2019: the entry "Draft submission for motion for leave to amend and to join C. Watson as plaintiff" (0.1 hrs.) and on April 6, 2020, the entry " draft notice of submission" (0.1 hrs.). These entries are certainly more administrative because it requires simply the reproduction of a form document that accompanies any motion filed in federal court. Therefore, entries, which total 0.2 hours will be disallowed for these entries.

On April 27, 2020, the entry is " correspondence to court reporter requesting transcript of hearing on Motion to Compel" (0.1 hrs.). This entry requesting a copy of a hearing transcript, requires no special legal skill is again administrative. Therefore, this entry will be disallowed.

The final entries in this category are dated April 16, 2020 and May 1, 2020. The entry of April 16, 2020 and states "Draft deposition notices for Ian Kennard, Dayone Elliott and Darrin Elliott, Sr." (0.2 hrs.). The entry on May 1, 2020 states "Draft amended notices of deposition for three individual defendants previously scheduled for May 4, 2020, (0.1hrs). As opposed to drafting a topic list, the drafting of the notices is particularly routine and does not require unique legal skill. Most telling, the second entry required only the reprinting of the original notice and adding the word "amended" and inserting the new date. Certainly, clerical help could have completed this task. Therefore, 0.3 hours shall be disallowed.

In sum, the Court is reducing Plaintiffs' total billable hours by 1.3 hours for clerical work performed by Plaintiffs' attorney.

### 5. **Associate Level Work**

Defendant contends that Plaintiffs' counsel charge excessive amounts for associate-level tasks such as basic legal research, document review and drafting. R. Doc. 81, p. 29. Defendants

contends that some of the work was unnecessary and duplicative and others should have been written off or alternatively greatly reduced either to a paralegal or associate rate given the nature of the work involved. *Id.* Specifically, Defendants contend that Plaintiffs' counsel appears to have charged significant time and money for legal research of basic wage and hour law. R. Doc. 81, p. 17. The Defendants contend that these charges were not necessary to the simplicity of the matters and counsels claimed experience with wage and hour law. *Id.* The Defendants point to seven entries of research time spent. *Id.*

Plaintiffs contends that their counsels work for the matter is reasonable. *See* R. Doc. 73-1, p. 23. They contend that their lawyer was required to spend substantial time obtaining the relief awarded in this case and that the hours spent were reasonably expended in pursuit of obtaining a favorable resolution for them. *See id.* Plaintiffs further contend that the fact that the defendants had five attorneys assigned to represent them is powerful evidence that the time he expended representing his clients was necessary for them to obtain a successful resolution. R. Doc. 73-1, p. 25.

"Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner." *Union Cent. Life Ins. Co. v. Berger*, No. 10 CIV. 8408 PGG, 2013 WL 6571079, at *1 (S.D.N.Y. Dec. 13, 2013) (collecting cases where courts reduced a senior attorney's rate otherwise found to be reasonable, in instances where that senior attorney performed associate and junior attorney level tasks), *see also Kuper v. Empire Blue Cross & Blue Shield*, No. 99 CIV. 1190JSGMHD, 2003 WL 23350111, at *13 (S.D.N.Y. Dec. 18, 2003), *report and recommendation adopted*, No. 99-CV-1190, 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004) (reducing attorney's hourly rate for specific time spent on junior-level tasks).

21

On September 2, 2019, Williams made an entry for "Research joinder requirement under Rule 20 in preparing motion to join C. Watson as Plaintiff. . . ." (0.6 hrs.). That same day, Williams also made an entry for "Research  caselaw for use in Rule 15 section of motion" (0.2 hrs.).

On September 25, 2019,  "Research caselaw re: counting overtime in bi-weekly intervals rather than weekly hours and FLSA violation relating to the same" (0.2 hrs.). Another entry was also made for  "Research on permissibility of Defendant's attempt to incorporate pleadings filed-in another matter and prior to the filing of plaintiffs' complaints for use of filing response to MTD" (1.2 hrs.).

On October 15, 2019, an entry reads "Research and identify caselaw holding that FLSA/Wage Payment claims are not subject to heightened pleading standard for use in opposition to MTD" (0.3 hrs.).  Also, on October 15, 2019, Williams includes an entry for "Research and identify caselaw to refute Defendants' assertion that Plaintiffs are required to assert collective-action claims just because a consent form is filed with complaint" (0.8 hrs.). Finally, on October 15, 2019, there is an entry for "Research caselaw to oppose Defendants claims that Plaintiffs have not pled actionable FLSA claims" (0.9 hrs.).

The next entry dated October 16, 2019 provides, "Research Wage Payment Act cases permitting causes of action for non-payment of straight-time pay"  (0.4 hrs.). The next entry also dated October 16, 2019,  indicates "Research cases holding that individual defendants can qualify as 'employers' for purposes of FLSA liability, particularly at the pleading stage and interpreting 'economic reality' factors for 'employer' status" (1.7 hrs.).  On that same day, an additional entry was made, "Research caselaw concerning individual liability under the Wage Payment Act for use in opposing Defendants' Motion to Dismiss" (0.4 hrs.).

Williams, according to  the Court's docket sheet, is a solo practitioner.  Williams, however,

frequently has FLSA cases in this court and is not, therefore, inexperienced in the subject matter. Consequently, he would be more knowledgeable of the area of law than a lawyer who has not had an FLSA case before which should result in less time spent researching legal issues on the topic. Legal research is a task normally assigned to a junior lawyer. *See Hagan*, 2001 WL 531119 at *7 (citing *League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School Dist.*, 119 F.3d 1228, 1233, n.3 (5th Cir. 1997)). Therefore, the Court finds these entries are excessive. Therefore, indicated in the section regarding the reasonableness of the rate, the Court finds a rate of $275 should be applied to the 6.7 hours legal research entries.

6. **Responsive Discovery Review (11,000 pages)**

Next, the Defendants contend that Williams' efforts requesting and reviewing 11,000 pages of documents was unnecessary and also unproductive. R. Doc. 81, p. 24. The Defendants contend, therefore, that the 11.4 hours should be written off or at the very least billed at a much lower rate; i.e., for a paralegal or an associate. *Id.* The Defendants point out that Williams has a paralegal whose hourly rate is $100.00. R. Doc. 81, p. 25 n. 15.

The Plaintiffs contend that its outside of the scope of a paralegals expertise to analyze documents produced especially when the Defendants were tardy in responding. R. Doc. 84, p. 9. Williams contends that he was required to review the discovery responses in a matter of days while simultaneously preparing to take four depositions and defend three depositions. *Id.*

The entries in question involve the review of second and third supplemental discovery responses. In this topical area, the questioned entries are dated April 28, 2020 (1.5 hrs., 3.2 hrs.); May 1, 2020 (1.9 hrs.); May 2, 2020 (2.9 hrs.); and May 4, 2020 (1.9 hrs.). Indicative of the contentious nature of this matter, the Defendants suggest that Williams pursued the production of documents that were not originally produced by them in response to the original request for

production of documents and interrogatories. While the Defendants suggest that the decision to pursue the additional information was excessive and unproductive, they fail to explain this position in any respect. The Court finds that reviewing discovery responses is often essential to assessing the strengths or weaknesses of a case and, therefore, the 11.4 hours charged in this respect are reasonable. Notwithstanding, given the routine nature will be charged at a rate of $275 per hour.

7. **Drafting Pleadings-Time**

The Defendants also contend that the time spent drafting the complaint was excessive. R. Doc. 81, p. 25. A total of 2.9 hours were billed associated with the work of the original complaint. The docket shows that the complaint is six pages. R. Doc. 1. However, it is not unreasonable to think that the work associated with its crafting took 2.9 hours. Therefore, the Court finds that the hours charged for drafting the complaint are reasonable. The Court will address whether the complaint benefited the case later in this opinion.

Defendants also contend that 2.2 hours of time spent drafting the Amended Complaint is excessive. The amended complaint is nine pages with page exhibit attachments. R. Doc. 17. It also adds a bit more specificity than the originally filed amend complaint. *See id.* The Court finds that the 2.2 hours inquired crafting the amended complaint are reasonable.

Defendants also contend that the time spent drafting the Interrogatories (1.4 hrs.), Request for Production of Documents (2.1 hrs.), and Requests for Admissions (1.9 hrs.) was excessive. The time spent drafting the fifteen (15) Requests for Admission (15), the sixteen (16) Interrogatories (16), and thirty-five (35) Request for Production (35) are reasonable and not unusually excessive.

Included in the challenge to the hours spent on crafting discovery responses are challenges to the following entries:

| | | |
|---|---|---|
| 2/05/2020 | Draft Plaintiffs initial disclosures | .6 |
| 4/06/2020 | Draft 16-page Memorandum in Support of Motion to Compel. | 5.3 |
| 4/21/2020 | Prepare motion for leave to file reply in support of motion compel and proposed order | .2 |

In reviewing the supporting memorandum, the Court finds that the 5.3 hours are reasonable. The memorandum had to address the general objections lodged by the Defendants, the failure of the Defendants to attach a privilege log despite having asserted the objection and the completeness of the responses. In addition, the Court finds that the .6 is reasonable to draft initial disclosures and thus will allow. Again, the Court will address the success and effectiveness of the work regarding the motion to compel later in this opinion. The Motion for Leave to File a Reply in Support of the Motion is a form document that leaves requires minor adjustments such as the caption and the title of the pleading. It is common knowledge that supporting pleadings like this need not be written by the attorney. As such, the 0.2 hours are disallowed as administrative.

9.    **Unsuccessful Work**

   A. **Complaint and Amended Complaint**

The Defendants also contends that certain pleadings in the case did not produce successful results but were billed at a premium rate for routine work. The Defendants contend that because this work was not successful the time spent should be disallowed.

The plaintiffs contend that the Amended complaint provides detailed factual allegations, documentary evidence, and legal authorities demonstrating the defendants FLSA violations. R. Doc. 73-1.Williams contends that because he attached DOL-created documents that reflected the actual pay and deductions for employer required items which were evidence of violations of FLSA. R. Doc. 73-1, p. 10. Williams contends that Plaintiffs provided information early in the case and because the Defendants mounted a vigorous and expensive defense that resulted in a substantial

increase in attorney's fees incurred in prosecuting the case. R. Doc. 73-1, p. 13.

The complaint generally states that the Defendants deprived Plaintiffs of compensation that violated the FLSA. R. Doc. 1 ¶¶ 22-24. The Plaintiffs generally alleged that the violation was willful entitling them to damages and attorney's fees. *See id.* The complaint failed to describe the specific action, the defendants engaged in violations of the FLSA and the wage payment act. See R. Doc. 1, ¶¶ 27-29. The complaint as written was vague as corroborated by Plaintiff's decision to amend the complaint. Therefore, the time spent, 2.9 hours, in drafting the complaint will be disallowed.

Next, looking at the amended complaint, which contained several new clarifying allegations as to why the claim was filed, Plaintiffs decided to attach exhibits to the complaint providing information in the broadest sense. *See* R. Doc. 17, ¶¶ 15, 17,18. The amended complaint indicated that in several particular paystubs Plaintiffs were only paid straight-time rate of pay even when the Plaintiffs worked more than forty hours a week. *See* R. Doc. 17, ¶ 18(a-(b)). The amended complaint also alleged that the Plaintiffs' wages were reduced by un-described deductions. *See id.* The Court finds that the 2.2 hours spent drafting amended complaint considering the research included in footnotes, references to particular pay stubs in describing the claim, and attaching the pay stubs, was fruitful, reasonable, and will be allowed.

B. **The Motion to Compel**

Defendants contend that the Motion to Compel filed in this case was only partially successful but yet Williams seeks compensation for all of the billing time. R. Doc. 81, p. 18. The Defendants contend that while Williams sought relief in thirteen (13) areas, they were only granted relief as to three substantive items. *Id.* They point out further that the request for attorney's fees associated with the Motion to Compel was denied. R. Doc. 81, p. 19.

The Plaintiffs contend that their motion to compel was not premature because it took 80 days for them to provide responses from the date of first request, and 30 days after the filing of their motion to compel. R. Doc. 84, p. 6. Plaintiffs contend that the Defendants have no right to dictate how their counsel prosecutes the case and that requesting documents fundamental to a wage and hour claim i.e. payroll records were necessary. R. Doc. 84, p. 7. Therefore, Plaintiffs contend that the time spent by their counsel was reasonable. *See id.*

Rule 37 of the Federal Rules of Civil Procedure provides that if a motion to compel "is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(c). In exercising that discretion, the court may draw upon its "first hand familiarity with all the pertinent circumstances of the particular case." *JSC Foreign Economic Association Technostroyexport v. Int'l Development & Trade Servs., Inc.,* No. 03-CV-5562, 2005 WL 1958361, at *11 (S.D.N.Y. Aug. 16, 2005)(citation omitted).

Interestingly, this Court has previously considered the issue of whether attorney's fees should be granted due to the partial grant on Plaintiffs' motion to compel. R. Doc. 64, p. 44. The weight of the decision was against the motion and now the Court is being asked to consider again the issue in the context of the resolution of the case. The Court finds that, in the circumstance of this case, where the plaintiff's motion sought disclosure of thirteen categories of information and was successful on three, the motion can only be considered partially successful and Defendant's had reason to withhold production of some of the information sought. This Court already chose to disallow fees for that motion and reiterates the same today. Therefore, the 13.7 hours billed for the Motion to Compel will be disallowed.

C. **Unsuccessful Appeal**

The Defendants also contend that Williams filed a baseless appeal of the Court's decision not to have a hearing after Defendants sent a request to undersigned's eFile box seeking an extension of time to produce certain communications but failed to seek any sort of relief. R. Doc. 61. Williams failed to provide a memorandum in support and the clerk of this court deficiented the motion and gave Plaintiffs seven (7) days to refile. Plaintiffs never refiled and the motion was terminated before even going under consideration. As this motion was not even considered, no attorneys fee associated with this effort is appropriate. Therefore, the 1.6 hours sought for the appeal will be disallowed.

10. **Computation of Reasonable Fee**

Having consider the issues raised by both sides, the Court will proceed with computing the reasonable fee:

| Description | Billable Hour Total Hours 118.1 |
|---|---|
| Block Billed | -6.265 |
| Vague Entries | -1.1 |
| Deposition Prep | -9.0 |
| Administrative Work | -1.1 |
| Original Complaint | -2.9 |
| Partially Successful Motion to Compel | -13.7 |
| Unsuccessful Appeal | -1.6 |
| Remaining Reasonable Hours before Fee Differential | 83.435 |

Having determined that some of the work performed should be at a lower rate because of its routine nature. The Court will subtract from the reasonable hours the routine hours to get the hours to be charged at the $325.00 rate and then allocate the rate of $275 for the routine work.

Having determined that 18.12 hours were regarded as associate /routine level work, the Court will apply the reasonable rate of $275.00/hour.  The Court will now apply the reasonable rate of $325.00/hour to the remaining 64.335 hours of the time spent in this litigation.

| Christopher Williams | Total Hours | Reasonable rates | Reasonable Fee determination |
|---|---|---|---|
| Reasonable Hours | 64.335 | $325 | $20, 908.88 |
| Routine/Associate hours | 18.12 | $275 | $4,977.50 |
| Reasonable  hours and fee | 82.435 | | $25,886.38 |

10. **Adjusting the Lodestar**

Plaintiffs contend that number they propose, although higher than their recovery, is not uncommon in fee requests involving FLSA claims. R. Doc. 73-1, p. 25. Williams also contends that should the Court's analysis result in a fee less than that sought by the motion that the *Johnson* factors favor an upward adjustment to the lodestar. *Id.* Williams contends that because the Defendants assigned five lawyers to represent them in this case, they certainly cannot quarrel with the time he spent representing the Plaintiffs. *Id.*

The Defendants contend that after calculating the lodestar, the Court should further adjust

---

2 Total includes 6.7 hrs associate level research and 11.4 hrs of associate level discovery review

downward because the matter was a straight forward wage and hour case, not certified with limited discovery.  R. Doc. 81, p. 30. They contend that no deposition took place, no dispositive motions such as motions for summary judgments were filed, and no novel or complex questions were raised requiring a higher level of skill. *Id.* Since the matter was straightforward, the first and third *Johnson* factors support a downward adjustment to the lodestar. *Id.* In addition, the Defendants contend that Williams has offered no evidence that he was precluded from taking other employment case, and, finally, the attorney's fees sought is substantially out of proportion to the recovery of the Plaintiffs. R. Doc. 81, p. 31.

"There exists a strong presumption of the reasonableness of the lodestar amount." *Saizan*, 448 F.3d at 800. "After calculating the lodestar, the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson*." *Id.* "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800.

a. *First and Third Factor*

Williams contends that the *Johnson* factors should be adjusted upward because he was out numbered on the case by the defense attorneys.  He suggests that because there were more lawyers on the defense's side that, by implication, this is reflective of the difficulty of the matter.

He fails, however, point to any novel issues in this case. Additionally, the matter was resolved in the preliminary stages of litigation as there was no class certification, no depositions took place, and no summary judgment motions were filed.  Consequently, these factors weigh in

favor of a downward departure rather than an upward departure.

Notwithstanding, this Court in its line-by-line analysis of the billing entries went through and reduced Williams' rate charges for associate level work, as well as precluded any time entries for excessive, duplicative of administrative level work. As such, the Court has already reduced Williams' award in a manner that accounts for the first and third *Johnson* factors. To do so again would be impermissible double-dipping. As such, the Court finds the first and third factors neither weigh in favor nor against an adjustment.

b. *Second and Fourth Factors*

There were no unusual questions nor is there any evidence that Williams was precluded from other employment due to his acceptance of the case. There were only three Plaintiffs in this case. While the case required a review of the payroll records to determine if the wages were property calculated, this is a rather standard procedure. Williams does suggest, again, the inverse that because there were so many defense attorneys that they would be paid regardless of the outcome. The Court is unsure of this argument advances the issue of him being precluded from taking other work due to his acceptance of this case. As such, the Court finds these factors weigh in favor of a downward departure.

c. *Eighth Factor*

The eighth *Johnson* factor requires consideration of the amount involved and results obtained. This factor requires consideration to the amount of damages awarded as compared to the amount sought and whether the amount of the recovery and the amount of the attorney's fees are substantially out of proportion.

Williams contends that his clients' monetary awards were between (a little) more than two times and (a little less than) than four times the Defendants' previous settlement offers. He points

31

out that the previous settlement offers were inclusive attorney's fees . He contends that because he accepted the offer of judgment that it was exclusive of fees, his clients actually recovered more than the $17,750.00 accepted in the offer of judgment.

Here, however, the Court cannot find Williams' proposed attorney fee of $41,335.00 is proportional to his three clients' sum recovery of $17,750.00. Allocated amongst the three Defendants, Rodney is to receive $9,100.00; Batiste is to receive $4,600.00; and Watson is to receive $2,850.00. *See* R. Doc. 73-1, p. 22.

The Court has reviewed the cases cited by the Plaintiffs for the proposition that a higher attorneys fee than award may be appropriate. However, three of the cases proceeded all the way to jury trial, which this case did not. *See James v. Wash Depot Holdings, Inc.,* 489 F. Supp. 2d 1341 (S.D. Fl. 2007); *Tyler v. Westway Auto. Serv. Ctr., Inc.,* No. 02-61667-CIV, 2005 WL 6148128 ( S.D. Fla. Mar. 10, 2005); and *Almendarez v. J.T.T. Enters. Corp.,* No. CIV. JKS 06-68, 2010 WL 3385362 (D.Md. Aug. 25, 2010). The remaining case relied upon for the support of approval of either an upward adjustment of the original request is *Butler v. Directsat USA, LLC*, No. CV DKC 10-2747, 2016 WL 1077158 (D. Md. Mar. 18, 2016). While the *Butler* case did not proceed to trial, the plaintiffs there spent nearly five (5) years litigating the case. The Court finds that clearly more time and work went into the cases relied upon by Plaintiffs whose case was filed in July 2019 and settled less than a year later in May 2020. In contrast to these cited cases, this matter was resolved in the preliminary stages requiring some, but not extensive vigorous work for several years.

The Court, therefore, finds that a downward adjustment is appropriate and discount of the reasonable fee of 15% will be applied. Considering this downward departure from $25,886.38, the reasonable fee considering the *Johnson* factors is $22,003.42.

IV.    **Recommendation**

Accordingly,

**IT IS RECOMMENDED** that **Plaintiff's Motion for Attorney's Fees and Costs (R. Doc. 73)** be **GRANTED** and that the Plaintiffs are awarded reasonable attorney's fees in the amount of **$22,003.42.**

**IT IS FURTHER RECOMMENDED** that Defendants and their counsel shall satisfy their obligation to the Plaintiffs **no later than twenty-one (21) days** after the signing of this order.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 30th day of July, 2020.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.